# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

FREDDIE STOKES,          *

               *

       Debtor/Appellant      *

               *

v.                      *      Civil No. PJM 04-3916

               *

UNITED STATES OF AMERICA,   *

               *

       Appellee           *

## OPINION

Pro se Debtor Freddie Stokes seeks leave to appeal an order of the Bankruptcy Court denying his objection to a proof of claim of the United States Internal Revenue Service (IRS) and ordering that the claim be allowed.  He argues that the IRS abused its discretion in refusing to accept his amended income tax returns for the years 1995 to 1998 since, according to Stokes, he had provided sufficient evidence to demonstrate that the IRS's assessments based on his original tax returns were arbitrary and excessive. The Court DENIES the Motion for Leave to Appeal.

I.

Stokes filed tax returns with the IRS for tax years 1995, 1996 and 1997 on April 6, 1999.  His return for tax year 1998 was filed on August 14, 1999. Based on the income reported on these untimely returns, the IRS assessed penalties and interest against him for each of those years.[1]

---

[1]      Stokes attempted to enter into an "Offer in Compromise" with the IRS on November 12, 1999. This offer was rejected on March 29, 2002. On November 21, 2003, he again attempted to negotiate his liabilities. This second Offer in Compromise was also rejected by the IRS.

The IRS applied tax refunds owed to Stokes for the 2000 and 2001 tax years to his tax liabilities for 1995.

When, in July 2002, Stokes learned that the IRS had applied his refunds to his prior tax liability, he contacted the Service.  He alleges that he was told at that time that the returns he had filed for the 1995-1998 tax years reported rental income received by him during those years on the incorrect schedules. [2]  He further states that the IRS representative with whom he spoke also informed him that if he had properly reported his rental income on his returns, he would not have been assessed any liability for those years. As a result, says Stokes, he ordered copies of his original returns for years 1995-1998 and, on January 30, 2003, hand-delivered amended tax returns for those years to the IRS office in Philadelphia.

On or about February 11, 2003, the IRS filed notices of liens for tax years 1995-1998 against Stokes in the Circuit Court for Prince George's County, Maryland. Stokes states that, approximately one month later, he received a telephone call from an IRS representative requesting additional information regarding his amended returns, which he says he faxed to the IRS representative on March 19, 2003.

On June 10, 2003, Stokes initiated a Chapter 13 proceeding in the Bankruptcy Court in this district, in which the IRS filed an amended proof of claim (the "IRS Proof of Claim"). The IRS claimed in total $78,236.86, categorizing $65,295.00 as a secured claim, $346.43 as an unsecured priority claim and $12,595.43 as an unsecured claim. The IRS Proof of Claim was based upon the IRS's tax assessments from Stokes's original returns for 1995 to 1998. Stokes filed a timely

---

[2]    Stokes indicates that the rental income was incorrectly reported on Form 1040 Schedule C (Profit or Loss From Business) rather than on Form 1040 Schedule E (Supplemental Income and Loss).

objection to the IRS Claim and, on January 28, 2004, a hearing was held on the objection after which

the parties were permitted to submit post-hearing memoranda.  On October 29, 2004, the Bankruptcy

Court denied the objection, allowing the claim precisely as prayed:  $65,295.00 as a secured claim,

$346.43 as an unsecured priority and the balance as an unsecured claim.

On November 8, 2004, Stokes filed his Notice of Appeal and a Motion for Leave to

Appeal from the denial of his objection to the IRS claim.  There was a period of confusion regarding

the proper defendant/appellee in this matter, but it was eventually established that the United States

is the proper party and the United States has now filed a Memorandum in Opposition to the Motion

for Leave to Appeal.

II.

Stokes seeks permission to appeal under Section 8003(a) of the Bankruptcy Rules.

Because he seeks to appeal an interlocutory order, the threshold question is whether the Court should

entertain this appeal at this time. [3]

The jurisdiction of federal district courts to review orders of the bankruptcy courts

is governed by 28 U.S.C. § 158(a):

> The district courts of the United States shall have jurisdiction to hear appeals from
> final judgments, orders, and decrees, and with leave of the court, from interlocutory
> orders and decrees, of bankruptcy judges entered in cases and proceedings referred
> to the bankruptcy judges under section 157 of this title.

Whereas an order dismissing a bankruptcy case is a final order appealable of right, an order denying

a motion – such as the present one – is typically interlocutory in nature and appealable only with

leave of court.  *See In re Jackson*, 190 B.R. 808, 810 (W.D. Va. 1995); *In re Hebb*, 53 B.R. 1003

---

[3]      Though neither party has addressed this point, the Court is directed to decide
jurisdictional questions *sua sponte*. Fed. R. Civ. P. 12(h)(3).

(D. Md. 1995).  While § 158 does not indicate how district courts should exercise their discretion in this respect, most courts have found an analogy in the standards set forth in 28 U.S.C. § 1292(b), the statute governing discretionary appeals of interlocutory orders in non-bankruptcy cases. *In re Hebb*, 53 B.R. at 1006.  That analysis asks "(1) whether the order involves a controlling question of law as to which there is substantial ground for difference of opinion; and (2) whether immediate appeal would materially advance the termination of the litigation."  *Id.*

A bankruptcy court's order involves a controlling question of law when either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation.  *See In re Travelstead*, 250 B.R. 862, 866 (D. Md. 2000) (citations omitted).

A)      <u>Controlling Question of Law</u>

At best, the "controlling question of law" Stokes raises is whether the Bankruptcy Court's conclusion that the IRS's decision not to accept his amended returns was an abuse of discretion since "[i]t is undisputed that the decision to accept or reject an amended tax return lies within the discretion of the IRS."  *See Koch v. Alexander*, 561 F.2d 1115, 1117 (4th Cir.1977) (citing *Kearney v. A'Hearn*, 210 F. SUPP. 10 (S.D.N.Y.1961), *aff'd per curiam*, 309 F.2d 487 (2d Cir.1962) and *Klinghamer v. Brodrick*, 242 F.2d 563, 564 (10th Cir. 1957)).

The Bankruptcy Court concluded that Stokes had not made a factually sufficient showing that the IRS's decision not to accept his returns was an abuse of discretion.  It found that Stokes's original tax returns for tax years 1995-1997 were filed on April 6, 1999--nearly three years after the date that his 1995 return was due.  It also found that his amended returns were not filed until January 30, 2003--nearly four years after the untimely filing of his original returns.  The

Bankruptcy Court found further that, although Stokes made an Offer in Compromise in an attempt to negotiate his liabilities in 1999, it was not until January 2003 that he filed amended returns, which the IRS subsequently refused to accept.

This Court agrees with the findings of the Bankruptcy Court that the IRS did not abuse its discretion in refusing the amended returns.

In the first place, "there is no statute or general regulation having the effect of law which vests in a taxpayer the right to file an amended return after the time for the filing of the original return has expired." *Klinghamer*, 242 F.2d at 564 (citing *Keeler v. Commissioner*, 180 F.2d 707, 710 (10th Cir. 1950)).  The Bankruptcy Court very properly noted that "it would be utterly disruptive of the administration of the tax laws if a taxpayer could disregard his returns and automatically change an assessment based thereon by making an amended return in his favor after the expiration of the time for filing of the original returns."  Stokes had fair notice of the assessments he now disputes, but for several years after made no attempt to file amended returns, acting only after his Offer in Compromise was rejected and only after tax refunds due for later years were applied to his earlier liabilities.  Rejection of his late filed returns was eminently reasonable.

The Court also agrees with the Bankruptcy Court that Stokes failed to demonstrate that the IRS's assessments were in any other respect arbitrary and excessive. *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15 (2000) (holding that the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it and the taxpayer must first dispense with the presumption of correctness by persuading the court by a preponderance of evidence that the assessment is arbitrary and excessive.)  A taxpayer's returns, without supporting documents, are at best self-serving summaries of tax liability.  *See, e.g.*, *Greenbaum v. United States*, 80 F.2d 113, 125

(9th Cir. 1935); *Zeeman v. United States*, 275 F. Supp. 235, 256 n.8 (S.D.N.Y. 1967).  Apart from his returns, Stokes offered no other testimony or evidence to demonstrate the incorrectness of the assessments.

B)      Substantial Ground for Difference of Opinion

To justify an interlocutory appeal, a petitioner must also demonstrate that a difference of opinion exists between courts on a given controlling question of law, creating the need for an interlocutory appeal to resolve the split or clarify the law.  *See KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 82-83 (E.D. Va. 2000) (citing *McDaniel v. Mehfoud*, 708 F. Supp. 754, 756 (E.D. Va.1989) ("The only apparent difference in opinion defendants demonstrate is between their counsel and the Order of this Court. Counsel's disagreement with the Court is simply not reason enough to grant an interlocutory appeal.")).

In the present case, Stokes has not really challenged the controlling legal question much less has he shown that there is substantial ground for difference of opinion with respect to it. His Motion for Leave to Appeal the Bankruptcy Court's order also fails on this basis.

C)      Materially Advance the Ultimate Termination of the Litigation

Alternatively, to justify leave to file an interlocutory appeal, resolution of the disputed issue must materially advance ultimate termination of the litigation.  *See In re Travelstead*, 250 B.R. at 867 (citing *Genentech, Inc. v. Novo Nordisk, A/S*, 907 F. Supp. 97, 100 (S.D.N.Y.1995) ("For certification to be appropriate, the district court must be of the opinion that immediate appeal of an order will literally accelerate the action as a whole.")).  In the present case, even were the Court to reverse the Bankruptcy Court's Order (which it will <u>not</u> do), the reversal would not materially advance the ultimate termination of the litigation.

Stokes has failed to meet his burden of proof to show why the Court should grant his Motion for Leave to Appeal.

III.

Accordingly, the Motion for Leave to Appeal will be DENIED.

A separate Order will ISSUE.

_____/s/_____

**PETER J. MESSITTE**

**September 30, 2005**                    **UNITED STATES DISTRICT JUDGE**